Morning, your honors. Tom Bundell, pro bono counsel on behalf of the plaintiff appellant, Frederick Lee Jackson. I'd like to reserve I noticed you were pro bono counsel. Was there no counsel below? You know, I don't know the answer to that. I don't believe all the briefs are written pro se by Mr. Jackson. I don't know whether he was represented at the hearing specifically or not. I guess the answer is no. And if you were to prevail in this claim, the result would be whatever actual damages the jury awarded your client, which you might speculate would not be very large, or where the real award would come would be attorney's fees. That might be the greatest portion of the actual damages. Who would that go to? What does pro bono mean? Well, the attorney's fees that we suggest in our briefs, your honor, actually go toward whether Mr. Jackson paid any attorney's fees in the decade that he fought to overturn his initial conviction. And I don't know for sure the extent to which he paid any actual attorney's fees in that instance. But those would be actual damages. Any fees or costs that he incurred during that time to overturn his initial conviction would be actual damages he sustained as a result of it. I'm just curious. I mean, there's a fair chance he didn't pay any attorney's fees. That may be the case, your honor, in which case he may be left with emotional distress damages, which is the primary claim of damages he makes in his complaint. Okay. I was just curious as to where this case could go if you were to win. Yeah. I mean, the immediate answer is it goes back to the district court for the defendants to answer the complaint. We're in an unusual procedural posture here because the defendants haven't even answered yet. And so we haven't had discovery and that sort of thing as far as I'm aware. It may be attorney's fees. All right. Right. So in its order, this Court asked for supplemental briefing on three issues. I'm going to primarily speak to those three issues. Our briefing covered a few other issues as well, which I'm happy to answer questions of the Court, but and I did want to reserve a couple of minutes for rebuttal as well. The first issue the Court asked for briefing on is whether Mr. Jackson's Fifth Amendment claims are heck barred. The animating principle of the Supreme Court's decision in Heck is that a civil tort action is not a proper vehicle for challenging the validity of an outstanding conviction. And so the Supreme Court in Heck held that a plaintiff may not assert a 1983 claim, quote, for harm caused by actions whose unlawfulness would render a conviction or sentence invalid. But the Court was very careful to state both in Heck and later in the Nelson v. Campbell decision, that its decision would not cut off all Section 1983 claims by inmates who had been convicted of crimes. How much – what was said about Heck in the dismissal of the claim by either the magistrate judge or the district judge? I mean – Well, I think both of them said that the Fifth Amendment claim was heck barred, that the magistrate judge wrote the principal opinion and then the district court had the job of adopting that decision, finding that it was heck barred. But given that the tainted statement wasn't used in the second trial and the first trial was already determined to have been flawed, I don't see why prevailing on the 1983 claim would necessarily implicate the second conviction, which is what I think we should be looking at. And that's precisely what our argument is. We don't think that the liability finding on a Section 1983 tort claim would undermine that second conviction any more than this Court's initial decision finding the constitutional amendment would undermine that second conviction. The point is, is that his constitutional rights were violated in connection with that first trial. And to the extent he sustained damages, emotional distress, attorney's fees and otherwise, economic damages from them, he's entitled to recover those. And recovering those damages would not in any way be inconsistent with the later finding that he committed those crimes. There's simply – our position is there's no inconsistency there. And Your Honor articulated that, I think, fairly well. And again, the question in heck is whether it would, quote, necessarily imply the invalidity of a conviction. You can see a jury here both finding the defendants liable for a Fifth Amendment violation and awarding damages of emotional distress in light of the fact that Mr. Jackson faced a possible death sentence and spent a decade almost without the possibility of ever being paroled, without ever seeing the light of day outside of prison, that that could cause him emotional distress damages. And a jury awarding those damages would not be in any way inconsistent with the ultimate conviction and sentence that he received. And I'll point out to the Court that we cited a plethora of cases in our briefs holding that a civil plaintiff's 1983 claims alleging unconstitutional procurement of evidence were not heck barred, even though the plaintiffs were later convicted of the crimes that that And I won't go through all those cases now, but the principal one relied on, one cited in the magistrate judge's opinion is the Olson case in the First Circuit. And there the Court held that some portion of damages might be heck barred, but it actually affirmed at 6,000 a minor judgment in favor of a person who stood, an inmate who stood in a very similar position to Mr. Jackson. That inmate had had a first-degree murder conviction overturned by a Brady violation that led to a no low contender plea for manslaughter for time served. So he did serve time for that crime. And yet the Court did affirm damages in favor of that Section 1983 plaintiff. We've cited the Ove and Lockett cases from this Court and a number of court cases from other go to the heart of a plaintiff asserting an unconstitutional procurement of evidence that was used against him in the initial trial and a later either guilty plea or possible retrial that does not conflict with his Section 1983 claim based on that unconstitutional procurement of evidence. The second question the Court asked for briefing on is whether Mr. Jackson's Fifth Amendment claims were barred by the statute of limitations. And the answer to this question turns on whether those Fifth Amendment claims accrued on or about the time of his conviction in April 1995 or at the time his conviction was effectively overturned by this Court in March of 2004. If that later date is the accrual date, there's no question that his claims are timely because his complaint was filed approximately six months after this Court's March 2004 decision. I would just point the Court to the decision in Trimble v. City of Santa Rosa, which we think is directly on point and still valid law. In Trimble, the plaintiff was convicted of murder and filed a Section 1983 claim alleging, among other things, that his Fifth Amendment rights were violated when the defendants failed to give him Miranda warnings, very similar to this case. And the Court affirmed the dismissal of Plaintiff's Fifth Amendment claim without prejudice on the ground that that claim had not yet accrued because, unlike Mr. Jackson, he had yet to receive relief from his conviction. And the Court said, quote, because Trimble's Fifth and Sixth Amendment allegations necessarily implied the invalidity of his conviction, and because he did not show that his — that this conviction has been invalidated, Trimble's Fifth and Sixth Amendment claims have not accrued at this time. But the dismissal was, quote, required to be without prejudice so that Trimble may reassert his claims if he ever succeeds in invalidating his conviction. That's what happened here. His conviction was invalidated, and he immediately asserted those 1983 claims. So Trimble, we think, is on point, decides the accrual issue. The only question is whether the Supreme Court's decision in Wallace v. Cato did anything to Trimble. And the decision in Wallace was specifically geared toward — in the unique context of an unlawful arrest, where the Court says when you have an unlawful arrest that leads to ultimately charges being made against the arrestee, the unlawful arrest ends as soon as the lawful arrest begins, if you will. And the fact that the arrestee might later be subject to a conviction isn't enough to find that those claims would be heck barred. And so an unlawful arrest claim accrues at the moment they're subject to lawful criminal proceedings of whatever sort. But that's simply not our case here. Here the constitutional violation occurred both at the time he was — his statement was — Mr. Jackson's statement was taken without being given his Miranda rights, and then finally when it was — when that statement was used against him at trial. That's — then he was immediately convicted. You can't have an accrual. There's no damages that would result. There's no claim until that conviction is actually reversed. And during the time between conviction and reversal, those claims would have been heck barred. So the accrual date, I think, for this case is that stated in Trimble. It's the time the conviction was overturned. And based on that accrual date, I don't think there's any question that his claim is valid. The malicious prosecution claims, I'll just state briefly. I know I wanted to reserve a few minutes for rebuttal. We also think the malicious prosecution claims are not heck barred, though admittedly this Court has to read the complaint a little more generously to get there. But I think the Court needs to do that. It's a pro se complaint written by an unsophisticated — it's not written by a lawyer. And so the standard is liberally construed. Are there any set of facts alleged in that complaint that would allow the plaintiff to validly recover? And here there is. The prosecution or the malicious prosecution claim alleges a broad range of conduct, but among those is that the prosecutor systematically conspired with Barnes to elicit this — to obtain this unconstitutional statement. So this statement, or is he alleging that the complaint that he did it in cases generally? I'm sorry. I'm not sure I understand your question. Is the complaint that this was — is the complaint limited to the fact that he did it in this case, or is the allegation that this was a practice? Well, there are some Monell allegations, I think, in this complaint, too, because they — he alleges that the — both the sheriff's department and the — well, specifically these allegations, I think, go to the sheriff's department, that they knew and acquiesced to Mr. Barnes's ploy of not reading Miranda rights to his — the people he was incriminating. And where did he admit that? It's — well, the primary — it's in — I can find it in the record. It's in a declaration. He declared that he routinely — He declared that. And it's in the — this court's prior decision describes that in a footnote, I think, describes that declaration where he acknowledges that this was a ploy to — that he routinely failed to read the Miranda rights as a ploy to get people — to get these — the people he was incriminating to make statements. And is there an allegation that the Ventura County Sheriff's Department, I guess, failed to supervise or knew about this constitutional violation recurring and did nothing to stop it? Well, the allegation in that regard is that the sheriff's department, quote, should have known or knew that this unconstitutional conduct was occurring and that by doing nothing to stop it, reading the complaint liberally, quote, sanctioned validity to the conduct and deprived Mr. Jackson of due process. And, again, I acknowledge you have to read this complaint liberally because it's written by a pro se complainant. But he did — he did allege that the sheriff's department knew of and acquiesced to this repeated unconstitutional conduct. And under the cases we cited, the Gomez, Beck, and Henry cases specifically, knowledge and acquiescence to a repeated constitutional violation is enough to assert liability under Monell. That's stepping to an issue that the Court didn't ask us to brief, but I appreciate the questions. And what was the allegation against the prosecutor? Is it just a general one of conspiring? Is it not? Well, there's a lot of allegations against the prosecutor, beginning with that he conspired to — or that the prosecutor, Ms. Murphy, conspired to procure this evidence with Mr. Barnes, leading up through, admittedly, through the trial, and even that it's ongoing. The complaint is very broad in that regard. But, again, the question for this Court, is there any allegations in there that are sufficient to support a valid claim? And the answer to that, I think, is yes. Is it on the theory that the prosecutor's activities for which you're seeking a remedy are not part of the prosecutor's prosecutorial role but relate to the investigative role? That's correct, Your Honor. We believe that Ms. Murphy was not subject to prosecutorial immunity because she was acting as doing investigative work. At least there's some allegations in that regarding the complaint, which is enough to get beyond the prosecutorial immunity that the district court found. All right. Well, you're down out of time, but we'll give you another couple of minutes. I appreciate it, Your Honor. Thank you. Good morning, Your Honors. Jeff Held, appearing on behalf of the Appellees. Good morning. Good morning. First of all, the Ninth Circuit's reversal of the murder conviction did not declare Appellant exonerated, but it gave him a retrial. At 364 F. 3rd, 1011, the opinion stated, quote, the State may seek to retry Jackson on the felony murder charge if it acts within a reasonable time, unquote. Now, Appellant's brief says that the Second Circuit was, quote, wrong, unquote. That's at page 35 on the final paragraph of Appellant's supplemental brief. And the Appellant's brief says that the Second Circuit was wrong in de Blasio because it held that it is not the law that any time a conviction is overturned on habeas corpus, there has been a favorable final determination in favor of the accused. The de Blasio court stated that the reversal of a conviction and remand for a new trial does not constitute a favorable termination. So does that just go to the prosecutorial misconduct allegation and the alleged conspiracy between the prosecutor and Barnes? Your Honor, I'm sorry. I'm a little hearing challenged. Can I ask you to repeat that? Sure. And I'm a little soft-spoken, so let's try again. Thank you. So does that argument go to the prosecutorial misconduct, malicious prosecution claim? No. I'm addressing my comments now to the HEC bar. The HEC bar? Yes. Okay. Yes. The HEC bar in connection with a malicious prosecution claim? Yes. For the reason that de Blasio, although it was a malicious prosecution case, relied heavily on the analogy to HEC v. Humphrey. Right. But I guess you're confusing me about HEC because the HEC bar, the HEC analysis goes to his second conviction now, doesn't it? Correct. The fact that he was reconvicted without the Miranda offensive evidence indicates that his success in this suit would necessarily imply the invalidity of that second conviction, which was constitutionally obtained in all respects. But why? Why would it suggest the invalidity of the second conviction? The invalidity would have to be based on the introduction of evidence that was not introduced. But the issue, the core issue is whether Mr. Jackson committed the armed murder of Genevieve Gonzalez. Well, you see, there are two ways of looking at this complaint, it seems to me. What you're saying is he's suing because a false confession was elicited from him. But I don't think that the way I understand his argument, it's we're suing because he was questioned when he shouldn't have been questioned. It doesn't have to we don't have to prove that the confession was false. We don't have to do any of that. We just have to prove that he wasn't given his Miranda warnings and he was questioned when he was in custody. And I don't see how that is inconsistent with a subsequent murder conviction that did not involve use of that evidence. The reason is because to take that position would be to utterly ignore Heck v. Humphrey. You cannot maintain a civil suit whose success would call into question your conviction of the underlying criminal charge. Okay. Suppose he wins a declaratory judgment to start with and it says he was questioned when he should not have been questioned. How does that undermine the conviction? Because the issue is whether he is guilty. The core issue is whether he is guilty of the armed murder of Genevieve Gonzalez. That's the core question. And we know that he was convicted of that crime. So for him to succeed in this suit would necessarily imply or actually say that he was not guilty of her murder. Why? You can be improperly questioned even when you're guilty. But then you have to face the civil hurdle of Heck v. Humphrey because the conviction, the second conviction, went to the core of whether he was present at the scene of her murder. The cases cited by the Appleese brief, for instance, Nelson v. Campbell, for instance, has to do with a tangential or a peripheral issue of how execution is carried out. But in this case, the core issue is whether he committed that crime. And since he was convicted of committing that crime, to allow this suit to continue over the bar of Heck v. Humphrey would create just the evil that the Supreme Court in Heck envisioned. We have two inconsistent adjudications. We have one state criminal court saying he's ---- Committed the crime. I'm sorry. That he committed the crime. Yes, exactly. All right. And what's inconsistent about the other civil verdict that says that he was questioned improperly? I'm sorry, Your Honor. Could you repeat that? Yeah. You said we have two inconsistent decisions. One, the criminal case that he was convicted of committing the crime. Yes. And, two, the civil decision that he was improperly questioned, which has no effect on the criminal verdict. Because that improper questioning has no relationship to what went on in the criminal trial. Respectfully, Your Honor, I would disagree with that assertion. How? Why? That assertion for the reason that his un-Mirandized evidence that he was present at the scene is core. It wasn't introduced, was it? What he's ---- Not in the second. All right. Not in the second trial. So that verdict's not inconsistent, the verdict in the second trial. It is inconsistent, Your Honor, because it was critical to the core issue of whether he committed that criminal act of murdering the woman while raping her. How anything that was done or said in the questioning, un-Mirandized questioning, how did any of that affect the verdict? It caused him, in part, to be convicted in the first trial. No, no. I said the second verdict. It didn't. No. But the issue, the overarching issue that Hector asks us to consider is whether or not the person was guilty of the criminal charge. And we know that he was guilty. So to permit him to sue implies or suggests that, in fact, he wasn't guilty. That ---- No, it implies that the argument is that he was injured by virtue of the first trial, where a statement that was elicited in violation of his constitutional rights was introduced, and there was that enhancement, and he faced a death sentence or at least life imprisonment without parole, and therefore suffered injury from that, and so is deserving of damages for that injury, which is separate and apart from an attack on the second conviction, which I guess he's not attacking that conviction. But that statement wasn't used to get that conviction. Your Honor, since we have a disagreement on that issue, may I proceed to a related heck issue? Okay. Let me ask you one other question. Sure. What would your position be if an individual was improperly arrested, roughed up, and entitled to damages for that? And he was then convicted of committing a crime. Would you say that he cannot recover because it would show his innocence? That, Your Honor, is a good hypothetical, and it presents a different fact, use the phrase roughed up or excessive force. He or she would have a perfectly valid Fourth Amendment search and seizure cause of action under the Fourth Amendment, under Section 1983, and under the Would it be barred by heck? What? Would it be barred by heck? The answer to that question lies in an analysis of the United States Supreme Court decision. Is the answer yes or no? Would it be barred by heck? It can't be answered yes or no. No? In the United States Supreme Court decision in Chavez v. Martinez, the answer to the question you posed would have to be answered under the substantive due process component of the Fourteenth Amendment, and the answer would be whether the police conduct shocked the conscience. So in your hypothetical, I think the answer would be no, heck, wouldn't bar it, because there would be a triable issue of fact on summary judgment as to whether the police roughing up, as you put it, shocked the conscience or not. Okay. But it wouldn't be barred by heck. I didn't ask whether you could win the case on the merits. It wouldn't be barred by heck. It would probably survive summary judgment, and then the jury would have to determine whether it shocked the conscience. Okay. Is Chavez the case about the questioning of the defendant while he was in the hospital? Is that that brief? Yes. That would be the case. We know a little bit. Yes. Okay. Yes. I was just wondering if that was the case you were referencing. We have some personal involvement. But, yes, that's right. But I wanted to, Judge Worthl, I wanted to discuss with you a different aspect of heck v. Humphrey, and that is the one considered by the Second Circuit in Olson v. Correiro. They deliberately foreswore reliance on heck. They were faced with a similar factual situation, reconviction by no low plea on remand. And they analyzed it not under heck, but under a traditional tort causation or proximate cause issue. Now, I've also submitted extensive undisputed evidence in the trial court that the defendant served multiple sentences for unreversed convictions for rape in concert. And it was undisputed that he served no additional time whatsoever by virtue of the initial reverse conviction. I understand that argument. But I also understand that he is not claiming damages based on serving additional time. It's more based on the emotional distress and the special enhancement and the facing life imprisonment without parole. I don't know what that would be quantified as. I don't know if a jury found that if they'd come back with $1, you know, given the argument that you're making that he would have been in jail anyway. Mr. Jackson would in any event have rightfully heard himself pronounced guilty of this heinous atrocity, irrespective of the admission of the unmerandized evidence. Does the special enhancement issue make any difference? In light of? You mean for committing it while armed? Well, didn't he get a special circumstances finding that he didn't get in the second trial, in the first trial? Oh, yes, that's correct. Does that make any difference? It doesn't in my understanding because the hearing of himself being pronounced guilty of armed murder is indistinguishable from what happened in a sentencing court some weeks later. So I would answer your question no. All right, you have less than a minute if you want to wind up. Yes, I'm sorry, I didn't get a chance to discuss some of the other issues. The issue for the prosecutor, Patricia Murphy, these allegations of conspiracy I've addressed at length in my brief in Ashelman v. Pope. This Court determined that allegations of conspiracy or even bribery or other malicious misconduct between the prosecutor and the judge or co-defendants is not sufficient to state a 1983 cause of action. What about when a prosecutor undertakes an investigative role? Suppose the prosecutor had gone out and conducted this illegal questioning herself? Oh, absolutely. And in Vandekamp v. Goldstein, the Supreme Court definitely maintained intact that where the deputy prosecutor signs warrants and questions witnesses and acts in all respects as an investigating officer, yes, you're absolutely right. But in this case, the record evidence was devoid of any reference to Patricia Murphy having questioned anyone or signed warrants or done anything that was investigative in nature.  And if this is like a dismissal of prejudice, the question is, could you from reading the complaint see that the plaintiff could have amended the complaint to allege a proper claim? Do you think that the do you think based on the complaint that the district judge could properly conclude that the plaintiff could not allege a complaint that would withstand dismissal? Well, I think so, because under this Court's determination last year in Daugherty v. City of Covina, amendment need not be allowed if there is no statement in the briefing or at oral argument of how the complaint could be amended. And we've heard no mention in the opposition to the summary judgment motion in the briefing in this Court or at argument today what Ms. Murphy may have done that was anything other than prosecutorial. She offered Bobby Rollins a plea bargain, and we know from this Court's decision No, not that. I'm talking about improper questioning. But she didn't participate, and nor is it alleged that she had any role in questioning the appellee, I mean, the appellant. Well, maybe that's best to ask your opponent. I understood that they were saying that the officer's questioning was at the encouragement of Ms. Murphy, that that was her role was to keep telling him, yes, go ahead and do it, without Miranda, I think. If that's not their position, then you're right. Well, we never heard of any allegation or evidence to that effect in the briefing or at argument in any court, so that's kind of a theory, or one could theorize that things happened, but there's no representation that it occurred and no request to amend on that basis. Thank you. Thank you. Thank you, counsel. If I could just have a couple of minutes. I want to first go back to the question about the person who's been roughed up. There's actually a clear answer to that question, and it's in cases, the excessive force cases we cited in our brief. I understand. I understand the court's amendment. No, but those cases go to whether those claims are HECBAR. I mean, Smith v. City of Hemet and those cases specifically say they're not HECBAR, and there are similar cases to here. The point is that you can have a constitutional violation, and even though the plaintiff is convicted of a crime related to that constitutional violation, the claim is not necessarily HECBAR. On the proximate causation issue, and here their claim is that Jackson would have heard himself pronounced guilty regardless, and while that may be true, I don't think this court is prepared as a matter of law to say that a defendant who hears himself pronounced guilty and faces a death sentence and suffers 10 years of fighting to overcome his life without the possibility of parole suffers no emotional distress damages. I think you can't say that as a matter of law, and the procedural posture of this case, of course, is that it's on a motion to dismiss. There hasn't been a lot of discovery. You don't have a jury verdict yet. Am I correct that Ventura never filed an answer? That's correct, Your Honor. I don't believe there's any answer in this case whatsoever. At least the Ventura County Sheriff's Department, I think, even acknowledged that procedural posture in its motion to dismiss. And if you had the opportunity to amend the complaint, what would you allege about the prosecutor Murphy? Well, I have to go based on what is in the complaint now and whether you could amend to more clearly state what's there now, because I haven't grilled Mr. Jackson on the underlying facts. But I think what you would amend, and what he tries to state here, is that she conspired with Mr. Brown. But basically what he talks about is that she conspired with Mr. Burns to Barnes to admit perjured testimony. But then if you continue to read on, it also talks about the Fifth Amendment violation in just the very next paragraph about how that Fifth Amendment ---- Was she even present in the interrogation? The answer is we don't know, Your Honor, which is, again, why it's ---- Then how could you allege that she was? Well, I think that the question is whether it's possible to allege any valid claim. And the answer here is, again, it's a pro se plaintiff. The question should be he should be allowed to state that if it's possible. But now you're here representing him, so you should be able to tell us what you would allege if we were to send it back and let you allege it. Well, I think he would allege that Ms. Murphy conspired with the defendant Barnes to elicit this testimony. That's based on the allegations that are in the complaint. Now, again, whether that ---- when put to proof, whether he can prove that or not in a summary judgment motion or at some later time, the evidence will have to be elicited. But in terms of amending the complaint, I think that that's read liberally. I think that's what this complaint says. And that's how it would be amended to sufficiently state a claim against Ms. Murphy. Though I acknowledge that there's a lot of other allegations in the complaint that go much broader than that. If the court has no other questions, I'll stop. Thank you, counsel. Thank you. The case just argued will be submitted.
judges: Canby, Reinhardt, Wardlaw